## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DEVONN PALMER,** | ) | **CASE NO. 3:17CV01474** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE SARA LIOI** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **JOHN COLEMAN,** | ) | **JONATHAN D. GREENBERG** |
| **Warden** | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| **Respondent.** | | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Devonn Palmer ("Palmer" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Palmer is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State v. Palmer,* Lucas County Court of Common Pleas Case No. G-4801-CR-0201402082-000.

For the following reasons, the undersigned recommends the Petition be DISMISSED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Palmer's conviction as follows:

{¶ 2} The incident giving rise to this appeal occurred on June 21, 2014. On that evening, a man wearing a dark hooded sweatshirt approached a parked vehicle occupied by Steven Abernathy, Abernathy's girlfriend, Erin Wright, and the couple's one-year-old daughter. As the man approached the vehicle, Abernathy, who was taking his daughter out of the vehicle, noticed that the man was holding a handgun.

{¶ 3} Once he reached the vehicle, the man instructed Abernathy to "give it up." Abernathy, who was holding his daughter with one hand, began to retreat with his other hand outstretched. Moments later, the man shot Abernathy in the leg, causing him to fall to the ground along with his daughter.

{¶ 4} After shooting Abernathy, the man proceeded to the passenger side of the vehicle, where Wright was seated. A struggle ensued as the man attempted to break into the vehicle. Eventually, Wright was able to pull the door shut. Meanwhile, a passerby approached the scene and stopped alongside Abernathy to check to see if he was injured. Apparently spooked by the presence of the passerby, the man fled the scene without further incident.

{¶ 5} Following the incident, a nearby resident approached Wright and told her the name of the robber. Wright then searched Facebook for the person identified by the neighbor and was able to locate the individual, confirming his identity by examining pictures that were attached to his Facebook account.

{¶ 6} One week after the robbery occurred, a detective with the Toledo Police Department, Sherry Wise, met with Abernathy and Wright to administer a photo array. According to Wise's testimony at trial, Abernathy immediately selected the photograph depicting appellant. The same photo array was shown to Wright, who also identified appellant as the perpetrator.

*State v. Palmer,* 2015 WL 10323036, at *1 (Ohio App. 6th Dist. Nov. 17, 2015).

## II. Procedural History

A.   **Trial Court Proceedings**

In July 2014, a Lucas County Grand Jury charged Palmer with (1) one count of aggravated robbery in violation of Ohio Rev. Code ("O.R.C.") §2911.01(A)(1) (Count One) and (2) one count of felonious assault in violation of O.R.C. §2903.11(A)(2) and (D) (Count Two). (Doc. No. 8-1, Exh. 1.)  Each charge carried a firearm specification.  (*Id.*)  Palmer pled not guilty

2

to both Counts.  (Doc. No. 8-1, Exh. 2.)

On August 26, 2014, Palmer, through counsel, filed a Motion to Suppress Photo Identification.  (Doc. No. 8-1, Exh. 3.)  The State filed a response.  (Doc. No. 8-1, Exh. 4.)  A pretrial hearing was held on September 19, 2014, during which Palmer, through counsel, voluntarily withdrew his Motion.  (Doc. No. 8-1, Exh. 5.)

The case proceeded to a jury trial commencing November 17, 2014.  (Doc. No. 8-1, Exh. 6.)  Pursuant to Ohio. Crim. R. 29, Palmer moved for an acquittal at the close of the State's case, which the trial court denied.  (*Id*.)  Palmer renewed his Ohio Crim. R. 29 Motion for Acquittal after the defense rested and the state trial court again denied the motion.  (Doc. No. 8-2. at Tr. 255.)  The jury found Palmer guilty of aggravated robbery (Count One) and felonious assault (Count Two), along with both firearm specifications.  (*Id*. at Tr. 297-298; Doc. No. 8-1, Exh. 7.)  The trial court merged both Counts.  (Doc. No. 8-1, Exh. 8.)

The trial court conducted a sentencing hearing on December 1, 2014, at which time Palmer was sentenced to six years for the merged charges (Counts One and Two).  (*Id.*)  The trial court also merged the two firearm specifications into one three-year firearm specification.  (*Id*.)  The three-year firearm specification was to be served consecutive to the sentences for all Counts, for an aggregate sentence of nine years.  (*Id*.)

**B.     Direct Appeal**

On December 23, 2014, Palmer, through counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court").  (Doc. No. 8-1, Exh. 9.)  In his appellate brief, Palmer raised the following assignments of error:

> 1)     Appellant's convictions for Aggravated Robbery and Felonious Assault
>         fell against the manifest weight of the evidence.

3

> 2)    The Trial Court erred in sentencing Appellant to three years on the gun
>        specification where the jury verdict forms only had the elements for the
>        one year specification.

(Doc. No. 8-1, Exh. 10.)  The State filed a brief in response.  (Doc. No. 8-1, Exh. 11.)

On November 17, 2015, the state appellate court affirmed Palmer's convictions and

prison sentences.  (Doc. No. 8-1, Exh. 12.)  *See also State v. Palmer,* 2015 WL 10323036 (Ohio

App. 6th Dist. Nov. 17, 2015).  Palmer did not appeal this decision to the Supreme Court of

Ohio.

## C.    Application to Reopen Appeal under Ohio App. R. 26(B)

On January 21, 2016, Palmer filed a *pro se* Application to Reopen Appeal Pursuant to

Ohio App. R. 26(B).  (Doc. No. 8-1, Exh. 13.)  Palmer's Application raised the following

argument:

> **Ommitted[sic] Assignment of Error No. 1:**
> **The State presented insufficient evidence to support Appellant's**
> **convictions.**

(*Id*.)  The State filed a brief in opposition.  (Doc. No. 8-1, Exh. 14).  On February 3, 2016,

Palmer filed a "Motion for Leave to File Amended Application to Reopen Appeal."  (Doc. No.

8-1, Exh. 15.)

On February 23, 2016, the state appellate court denied Palmers's Application and

associated Motion.  (Doc. No. 8-1, Exh. 16.)

On April 8, 2016, Palmer, proceeding *pro se*, filed a Notice of Appeal with the Supreme

Court of Ohio.  (Doc. No. 8-1, Exh. 17.)  Within his Memorandum in Support of Jurisdiction,

Palmer raised the following Proposition of Law:

> The Appellant received the ineffective assistance of Appellate Counsel when
> counsel failed to bring forth the viable issue insufficient evidence in the

4

Appellant direct appeal as of right.

(Doc. No. 8-1, Exh. 18.)  The State filed a brief in opposition.  (Doc. No. 8-1, Exh. 19.)

On June 15, 2016, the Supreme Court of Ohio declines to accept jurisdiction of Palmer's

appeal.  (Doc. No. 8-1, Exh. 20.)

**D.      Post-Conviction Filings**

*1.*      *Post Conviction Petition pursuant to O.R.C. 2953.21*

On March 1, 2016, Palmer filed a *pro se* pleading with the state trial court captioned

"Post-Conviction Petition Pursuant to Ohio Revised Code 2953.21."  (Doc. No. 8-1, Exh. 21.)

This filing raised the following claims:

> Petitioner was deprived of his Sixth Amendment right as guaranteed by the
> Constitution of the United States of America to the effective assistance of
> counsel due to counsel failure to suppress photo identification line ups and
> statments[sic] made by witness that did not testify at trial.

> Petitioner was deprived of his Fifth and Fourteenth Amendment right as
> guaranteed by the Constitution of the United States of America due to the
> State withholding material evidence from the Petitioner prior to trial.

(*Id*.)  The State filed a response in opposition.  (Doc. No. 8-1, Exh. 22.)  On May 25, 2016, the

state trial court denied Palmer's Motion.  (Doc. No. 8-1, Exh. 23.)  Palmer did not appeal this

decision to the state appellate court.

*2.*      *Motion for Order*

On November 16, 2016, Palmer filed another *pro se* pleading with the state trial court,

captioned "Motion for Order."  (Doc. No. 8-1, Exh. 24.)  Within this Motion, Palmer requested

the trial court grant him access "to the transcripts of the 911 phone call made on June 21st, 2014

at approximately 12:46 a.m.," pursuant to O.R.C. 149.43 and the Freedom of Information Act.

(*Id*.)  On January 18, 2017, the state trial court denied this Motion.  (Doc. No. 8-1, Exh. 25.)

E.     **Federal Habeas Petition**

On July 3, 2017,[1] Palmer filed a Petition for Writ of Habeas Corpus in this Court and

asserted the following grounds for relief:

>    **GROUND ONE**:     Petitioner was denied the effective assistance of
>                        counsel on direct appeal.
>
>                        Supporting facts: Appointed counsel failed to raise
>                        viable issues on appeal.  Appointed counsel did not
>                        review the record or investigate that facts of the case
>                        prior to filing the Petitioner direct appeal.
>
>    **GROUND TWO:**     Petitioner trial counsel was ineffective in the
>                        representation of Petitioner at trial.
>
>                        Supporting facts: Appointed counsel failed to
>                        subpoena witnesses, failed to properly investigate the
>                        facts of the case prior to trial, failed to object to the
>                        gun specifications being 3 years instead of one year.
>
>    **GROUND THREE:**   Appellant Aggravated Robbery and felonious assault
>                        convictions were against the manifest weight of the
>                        evidence.
>
>                        Supporting facts: The witness identification of the
>                        petitioner was based on unreliable eyewitness
>                        testimony due to the two victims being under the
>                        heavy stress of an incident that took place in a matter
>                        of seconds.  The investigation was botched and
>                        evidence was not properly handled and investigated.

(Doc. No. 1.)

On September 22, 2017, Warden John Coleman ("Respondent") filed his Return of Writ.

(Doc. No. 8.)  Palmer did not file a Traverse, despite an Order from this Court directing him to

---

[1]     Under the mailbox rule, the filing date for a *pro se* petition is the date a petitioner
delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While
the Petition herein did not arrive at the Court for filing until July 13, 2017, Palmer
reports he placed it in the prison mailing system on July 3, 2017. (Doc. No. 1 at 15.)
Thus, the Court will consider the Petition as filed on July 3, 2017.

do so within thirty days[2] "from the filing of Respondent's answer/Return of Writ."  (Doc. No. 6 at 1.)

### III.  Law and Argument – Statute of Limitations

**A.      One-Year Limitation Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court.  Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Subsections (A) are relevant to this Petition and will be discussed below.[3]

**B.      One-Year Limitation – § 2244(d)(1)(A)**

Respondent asserts Palmer's Petition is time-barred because he did not file within the one-year limitations period.  (Doc. No. 8 at 8.)  Respondent contends Palmer's conviction and sentence became final on January 4, 2016, which is forty-five (45) days after the state appellate

---

[2]      Palmer's Traverse was therefore due on October 23, 2017.

[3]      Palmer does not argue the limitations period should commence at a later date for any of the reasons set forth in §§2244(d)(1)(B)-(D).

court affirmed his conviction.  (*Id*. at 9.)  Respondent acknowledges Palmer filed several

motions, which served to toll the one-year limitation period.  (*Id*. at 10-11.)  However,

Respondent argues since "statutory tolling only extends Palmer's AEDPA statute of limitations

until June 5, 2017 and Palmer did not file his §2254 habeas petition until July 3, 2017" his

petition is time-barred.  (*Id*. at 13.)

      Pursuant to § 2244(d)(1)(A), the AEDPA's one year period runs from "the date on which

the judgment became final by the conclusion of direct review or the expiration of the time for

seeking such review."  28 U.S.C. § 2244(d)(1)(A).  However, this one-year limitation is tolled

during the time  " 'a properly filed application for State postconviction or other collateral review

... is pending.' § 2244(d)(2)."  *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d

684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); accord

*Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir.2003).  "The time that an application for

state postconviction review is 'pending' includes the period between (1) a lower court's adverse

determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the

notice of appeal is timely under state law."  *Id.*  Only "properly filed" applications for

postconviction relief or collateral review toll the statute of limitations, and "a state

postconviction petition rejected by the state court as untimely is not 'properly filed' within the

meaning of § 2244(d)(2)."  *Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 2, 3, 169 L.Ed.2d 329 (2007);

*Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no

matter their form, are 'filing' conditions, and a state postconviction petition is therefore not

'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL

73905 at *2 (S.D.Ohio Jan.8, 2009).  Further, if a state court ultimately denies a petition as

untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling.  *See Monroe*, 2009 WL 73905 at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir.2007).

Here, Palmer was sentenced on December 1, 2014 and timely appealed on December 23, 2014.  (Doc. No. 8-1, Exh. 8, 9.)  The state appellate court affirmed his conviction and sentence in a decision that was journalized on November 17, 2015.  (Doc. No. 8-1, Exh. 12.)  Palmer then had forty-five (45) days, or until January 4, 2016, to appeal to the Supreme Court of Ohio, but failed to successfully do so.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i).  Thus, the Court finds Palmer's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on January 4, 2016, forty five (45) days after the state appellate court issued its decision affirming his conviction and the time to file a timely notice of appeal with the Supreme Court of Ohio expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (when a petitioner does not appeal to the state's highest court on direct review, the case becomes final under § 2244(d)(1)(A) when the time period to do so expires).  Accordingly, the Court finds the limitations period commenced on January 5, 2016 and, absent tolling, expired one year later, on January 5, 2017.

However, Palmer filed two post-judgment motions which served to toll the statutory limitations period.  A review of the record indicates the limitations period initially ran uninterrupted for 16 days, from January 5, 2016 to January 21, 2016.  On January 21, 2016, Palmer filed[4] an Application to Reopen Appeal under Ohio App. R. 26, which tolled the statute of limitations.  (Doc. No. 8-1, Exh. 13.)

---

[4]      As noted *supra,* Palmer filed a "Motion for Leave to File Amended Application to Reopen Appeal" in connection with this Application on February 3, 2016.  (Doc. No. 8-1, Exh. 15.)

9

The state appellate court denied Palmer's Application and associated Motion on February 23, 2016.  (Doc. No. 8-1, Exh. 16.)  Palmer then filed a Notice of Appeal with the Supreme Court of Ohio on April 8, 2016.  (Doc. No. 8-1, Exh. 17.)  On June 15, 2016, the Supreme Court of Ohio declined to accept jurisdiction of his appeal.[5]  (Doc. No. 8-1, Exh. 20.)

However, the statute remained tolled because on March 1, 2016 – while his Rule 26(B) Application was pending – Palmer filed a *pro se* pleading with the state trial court captioned "Post-Conviction Petition Pursuant to Ohio Revised Code 2953.21" on March 1, 2016.  (Doc. No. 8-1, Exh. 21.)  The state trial court denied this Motion on May 25, 2016.  (Doc. No. 8-1, Exh. 23.)  Palmer then had thirty days, or until June 24, 2016, to seek review by the state appellate court, but failed to successfully do so.  *See* Ohio App. R. 4(A)(1).

At this point, 16 days of the statutory limitations period had elapsed.  Thus, when the limitations period resumed on June 25, 2016, it ran for 349 days[6] until it expired on June 9, 2017.

Accordingly, because the statutory limitations period expired on June 9, 2017 and Palmer

---

[5]    The ninety days of additional tolling which is calculated after the Ohio Supreme Court denies a *direct* appeal, in order to allow for a petition for writ of certiorari does not apply to appeals from *collateral review* decisions, such as a 26(B) application. *Minefee v. Grafton Corr. Inst. Warden*, 2015 WL 10382318, *4 (N.D. Ohio Dec. 7, 2015).

[6]    The Court acknowledges Palmer filed a *pro se* "Motion for Order" on November 16, 2016.  (Doc. No. 8-1, Exh. 24.)  Within this Motion, Palmer requested the trial court grant him access "to the transcripts of the 911 phone call made on June 21st, 2014 at approximately 12:46 a.m.," pursuant to O.R.C. 149.43 and the Freedom of Information Act.  (*Id.*)  As this Motion does not collaterally attack Palmer's conviction or sentence, it does not have any tolling effect.  *See Witkowski v. Vasbinder*, 2006 WL 618891, *4 (E.D. Mich. Mar. 9, 2006)("Further, federal courts have held that requests or motions for evidentiary material and transcripts actually filed with the court do not operate to toll the one-year period.").  *See also Cannon v. Bunting*, 2014 WL 6687220, *9 (N.D. Ohio Nov. 26, 2014)("To toll the AEDPA limitation period, courts in this circuit have held that the petitioner's actions must seek collateral review of their underlying conviction and sentence.").

did not file his habeas petition until July 3, 2017, it is untimely under §2244(d)(1)(A). Therefore, unless equitable tolling is appropriate, Palmer's Petition should be dismissed as time-barred.

**C.** **Equitable Tolling**

The Supreme Court has held the AEDPA statute of limitations is subject to equitable tolling in appropriate circumstances. *Holland v. Florida,* 560 U.S. 631, 645 (2010).  In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland,* 130 S.Ct. at 2565. *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).  A court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights." *Vroman*, 346 F.3d at 605, quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); accord *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir.2003).

The Court finds Palmer has failed to demonstrate he is entitled to equitable tolling. As an initial matter, Palmer has not raised any argument as to why equitable tolling would be appropriate. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)(holding a petitioner bears the burden of proving equitable tolling is applicable).  Regardless, the record does not establish Palmer has been reasonably diligent in pursuing his rights.  Palmer did not timely file his direct appeal with the Supreme Court of Ohio and has never attempted to file a Motion for Delayed Appeal with the Supreme Court of Ohio.  He also did not appeal the state trial court's denial of his petition for post-conviction relief.  In this Court, Palmer has not filed a Traverse, despite it

11

being due nearly a year ago.  Moreover, given that Palmer has been able to file multiple post-conviction motions with the state courts, there does not appear to be any "extraordinary circumstance" which prevented him filing a timely federal habeas petition.

The Court also rejects any suggestion Palmer's *pro se* status constitutes "extraordinary circumstances" warranting equitable tolling.  The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).  *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015).  *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015).  Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient.  *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing").

In sum, because Palmer failed to exercise his rights diligently and no extraordinary circumstance prevented him from filing his federal habeas Petition, the Court finds equitable tolling is not warranted in this case.

**D.**     **Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations.  The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1).  *Id*. at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329).  In making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence."  *Id*. (quoting *Schlup*, 513 U.S. at 332).

No actual innocence exception argument was raised in this case.  Palmer does not identify any new, reliable evidence of his actual innocence; i.e., exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not available to him at the time of his underlying criminal proceedings.  *See Schlup*, 513 U.S. at 324.  Rather, Palmer argues the "witness identification of the petitioner was based on unreliable eyewitness testimony due to the two victims being under the heavy stress of an incident that took place in a matter of

13

seconds."  (Doc. No. 1 at 8.)  While this argument may challenge the credibility of the eyewitnesses' account, it does not provide evidence of his actual innocence.

Accordingly, and for the reasons set forth above, the Court finds Palmer has not demonstrated he is entitled to the actual innocence exception.  Thus, the Court finds the instant Petition is time-barred under §2244(d)(1).

### IV.  Law and Argument – Exhaustion and Procedural Default

Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, he must exhaust his state court remedies by fairly presenting all his constitutional claims to the highest state court and to all appropriate state courts prior to that.  *See* 28 U.S.C. § § 2254(b), (c); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir.1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir.1987).  To fulfill the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review by the state's highest court, the Ohio Supreme Court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).  In order to fairly present habeas claims to the state courts, such claims must be presented at the first available opportunity.  *Rust v. Zent*, 17 F.3d 155, 160–61 (6th Cir. 1994).  A habeas petitioner bears the burden of demonstrating he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review.  *See Caver v. Straub,* 349 F.3d 340, 345 (6th Cir. 2003); *Rust,* 17 F.3d at 160; *Prather v.*

14

*Rees*, 822 F.2d 1418, 1420 n. 3 (6th Cir. 1987).

Federal courts will also not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[7] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.

---

[7] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

*Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also*

*Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*,

712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed

to exhaust state court remedies, and the remedies are no longer available at the time the federal

petition is filed because of a state procedural rule.")  This second type of procedural default is

often confused with exhaustion.  Exhaustion and procedural default, however, are distinct

concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of

the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer

available to a petitioner because he failed to use them within the required time period, procedural

default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to

raise claims in post-conviction proceedings where those claims could have been raised on direct

appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have

been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state

court. To fairly present a claim to a state court a petitioner must assert both the legal and factual

basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a

"petitioner must present his claim to the state courts as a federal constitutional issue-not merely

as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A

petitioner can take four actions in his brief which are significant to the determination as to

whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

16

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

17

critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

## A.  Ground One: Ineffective Assistance of Appellate Counsel

Ground One of Palmer's Petition asserts claims of ineffective assistance of appellate counsel.  (Doc. No. 1 at 5.)  Specifically, Ground One alleges appellate counsel was ineffective due to (1) failing "to raise viable issues on appeal" and (2) not reviewing or investigating the "facts of the case prior to filing" the direct appeal.  (*Id.*)

Respondent argues "Palmer's first relief ground is partially unexhausted and partially procedurally defaulted."  (Doc. No. 8 at 33.)  Respondent contends while Palmer did raise a claim his appellate counsel was ineffective due to the failure to raise a sufficiency of the evidence argument, Palmer "failed to fairly present and exhaust all other ineffective assistance of counsel claims."  (*Id.* at 27.)  Respondent asserts "*res judicata* prevents Palmer from further presenting the unexhausted claims to the Ohio courts."  (*Id.*)

A review of the state court filings reveals Palmer raised a claim of ineffective assistance of appellate counsel in his Rule 26(B) Application.  (Doc. No. 8-1, Exh. 13.)  In this Application, Palmer argued the state had presented insufficient evidence to support his convictions.  (*Id.*)  This claim did not include any argument regarding appellate counsel's failure to review or investigate the facts of Palmer's case prior to filing a direct appeal.  Palmer also did not argue his appellate counsel failed to raise any other "viable issues."  (*Id.*)

The state appellate court denied Palmer's Application and he appealed to the Supreme Court of Ohio.  (Doc. No. 8-1, Exh. 16, 17.)  In his Memorandum in Support of Jurisdiction,

Palmer argued his appellate counsel "failed to bring forth the viable issue [of] insufficient evidence in the Appellant direct appeal as of right."  (Doc. No. 8-1, Exh. 18.)  Palmer again did not raise any argument regarding his appellate counsel's failure to review or investigate the facts of his case or raise any additional "viable issues."  The Supreme Court of Ohio declined to accept jurisdiction of the appeal.  (Doc. No. 8-1, Exh. 20.)

In light of the above, the Court finds the following portions of Ground One are procedurally defaulted: (1) allegations Palmer's appellate counsel failed to properly investigate and review the facts of the case and (2) the failure to raise any other "viable issue" beyond[8] sufficiency of the evidence.  (*See* Doc. No. 1 at 5.)  As noted above, Palmer has not raised either of these arguments to the state appellate or supreme court.  He has not raised these arguments in any post-conviction filing.  (*See* Doc. No. 8-1, Exh. 21.)  Moreover, Palmer does not direct this Court's attention to, nor is the Court aware of, any additional mechanism in which he can now raise these issues in the state courts.  *See Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.").

Accordingly, the Court finds this portion of Ground One of Palmer's Petition is procedurally defaulted.

### 1.      Cause and Prejudice

Palmer may nevertheless obtain a merits review of this portion of Ground One if he can

---

[8]      In his Petition, Palmer does not directly argue the "viable issue" his appellate counsel failed to raise was an argument for sufficiency of the evidence.  (*See* Doc. No. 1 at 5.)  However, the Court will broadly read Palmer's *pro se* Petition to include the sufficiency of the evidence argument, as Palmer has consistently raised it in the state courts and eludes to it in his federal habeas Petition.

demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.

Palmer does not address the issue of cause and prejudice in his Petition, and as noted *supra,* he has not filed a Traverse.  In fact, in his Petition, Palmer asserts Ground One has been exhausted.  (Doc. No. 1 at 5.)  Given that Palmer was able to successfully file a Rule 26(B) application and appeal it to the Supreme Court of Ohio, the Court can find no reason or explanation for Palmer's decision to not raise these additional issues he now asserts in his federal habeas Petition at the time of filing his Rule 26(B) application.

Accordingly, and for all the reasons set forth above, the Court finds Palmer has failed to establish cause and prejudice to excuse the default of the above-discussed portions of Ground One.

### 2.    Actual Innocence

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995).  Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial.  *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

20

Here, Palmer does not raise an actual innocence exception argument.  Rather, Palmer argues the "witness identification of the petitioner was based on unreliable eyewitness testimony due to the two victims being under the heavy stress of an incident that took place in a matter of seconds."  (Doc. No. 1 at 8.)  Again, while this argument challenges the credibility testimony, it does not provide evidence of his actual innocence.  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

In light of the above, the Court finds Palmer has failed to demonstrate the procedural default of a portion of Grounds One should be excused on the basis of actual innocence.  Accordingly, it is recommended the above listed portions of Grounds One be DISMISSED as procedurally defaulted.

**B.** **Ground Two – Ineffective Assistance of Trial Counsel**

In Ground Two of his Petition, Palmer argues his trial counsel was ineffective due to failing to (1) subpoena witnesses; (2) "properly investigate the facts of the case prior to trial;" and (3) "object to the gun specifications being 3 years instead of one year."  (Doc. No. 1 at 7.)

Respondent argues Palmer "did not properly exhaust this relief ground in state court." (Doc. No. 8 at 38.)  Respondent contends Palmer's "inexcusable state court procedural defaults preclude federal habeas review and relief."  (*Id*.)  Respondent maintains "*res judicata* prevents Palmer from further presenting the unexhausted claim to the Ohio courts" and asserts Palmer is unable to establish cause and actual prejudice, manifest injustice, or actual innocence.  (*Id.* at 34.)

Palmer disputes none of this. Moreover, a review of the record indicates at no point have the state courts been able to review or consider the specific arguments set forth in Ground Two. Indeed, Palmer did not raise any ineffective assistance of trial counsel claims on direct appeal. (Doc. No. 8-1, Exh. 10.) In his Rule 26(B) application, he did not argue his appellate counsel failed to raise an argument for ineffective assistance of trial counsel. (Doc. No. 8-1, Exh. 13.) While Palmer did argue ineffective assistance of counsel in a March 2012 post-conviction filing, he did not present the same arguments as set forth in Ground Two. (Doc. No. 8-1, Exh. 21.) Rather, Palmer argued trial counsel was ineffective due to his failure to suppress (1) photo identification line-ups and (2) witness statements made by those whom did not testify at trial. (*Id*.) Thus, it was not under filing his federal habeas Petition Palmer made any of the arguments contained in Ground Two.

While Palmer can conceivably now file a Motion for Delayed Appeal with the Supreme Court of Ohio, the Supreme Court of Ohio will likely not entertain these claims. The Supreme Court of Ohio routinely does not consider claims which were not raised at the lower level of appellate review. *See State v. Philips*, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352(1977)("It is an established rule of long standing in this state that a constitutional question, either in a civil or criminal action, can not be raised in the Supreme Court unless it was presented and urged in the courts below."). *See also Evans v. Mitchell*, 344 Fed App'x 234, 244 (6th Cir. 2009). As Palmer has not presented his Ground Two arguments to the state appellate court, his arguments have "not been exhausted in accordance with state procedural mandates." *Fletcher v. Bradshaw*, 2017 WL 3130242, *2 (N.D Ohio July 24, 2017)(citing *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985).). Such "bypassing constitutes procedural default or waiver-barring federal habeas

review." *Id.  See also Morris v. Bunting*, 2017 WL 1450613, *8 (N.D. Ohio Jan. 19, 2017).

Thus, Palmer has procedurally defaulted this claim because he failed to properly present it to the

highest state court, and is now foreclosed from doing so.

Moreover, Palmer is unable to establish cause and prejudice to excuse the procedural

default of Ground Two.  Assuming, *arguendo*, appellate counsel was ineffective in his failure to

raise any issues regarding the ineffectiveness of trial counsel, Palmer did not raise this argument

in his Rule 26(B) application.  Thus, Palmer's ineffective assistance of appellate counsel claim

regarding this particular issue is itself procedurally defaulted and cannot provide cause to excuse

the procedural default of Ground Two.  *See Edwards*, 529 U.S. at 453.  *See also Barnette v.

Bunting,* 2017 WL 1079088 at *3 (N.D. Ohio Mar. 22, 2017).

Palmer also has not demonstrated the procedural default of Ground Two should be

excused on the basis of actual innocence.  As noted *supra*, Palmer does not raise an actual

innocence exception argument.  Rather, Palmer challenges the credibility of eye witness

testimony.  Because Palmer provides no new, reliable evidence which was not presented at trial,

he has not established actual innocence.

Accordingly, it is recommended Ground Two of Palmer's Petition be DISMISSED as

procedurally defaulted.

### V. Non Cognizable Claim – Ground Three

As discussed *supra*, the Court is recommending Palmer's entire Petition be dismissed, as

it was filed beyond the AEDPA statute of limitations.  However, in the interests of justice, the

Court will also consider Ground Three of Palmer's Petition, as it is not procedurally defaulted.[9]

---

[9]    Palmer raised his third ground for relief in his direct appeal to the state appellate
court.  (*See* Doc. No. 8-1, Exh. 10.)  While he did not timely file an appeal with the

23

In his third ground for relief, Palmer argues his convictions are against the manifest weight of the evidence.  (Doc. No. 1 at 8.)  He contends "[t]he witness identification of the petitioner was based on unreliable eyewitness testimony due to the two victims being under the heavy stress of an incident that took place in a matter of seconds.  The investigation was botched and evidence was not properly handled and investigated."  (*Id.*)  Respondent asserts a "manifest weight of the evidence claim does not raise a cognizable ground for federal habeas relief."  (Doc. No. 8 at 39.)

The state appellate court considered Palmer's claim on direct appeal and rejected it as follows:

{¶ 9} In his first assignment of error, appellant argues that the jury's determination of guilt was against the manifest weight of the evidence.

{¶ 10} When reviewing a manifest weight claim,

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.  *State v. Lang*, 129 Ohio St.3d 512, 2011–Ohio–4215, 954 N.E.2d 596, ¶ 220.

{¶ 11} Appellant's manifest weight argument in this case centers on the identity of the perpetrator. Specifically, appellant characterizes the state's evidence on the issue of identity as "unreliable eyewitness testimony of two victims under the heavy stress of an incident that took mere seconds to happen." Further, appellant contends that the testimony was biased by the neighbor who provided appellant's name to Wright. Despite his assertions,

---

Supreme Court of Ohio, he still has the option to file a Motion for Delayed Appeal with the Supreme Court of Ohio.  Thus, the Court does not consider this claim to be procedurally defaulted.  Neither Palmer or Respondent have argued to the contrary.

24

appellant does not point to any conflicts in the evidence on the issue of identity. Indeed, our review of the record reveals no such conflicts.

{¶ 12} Regarding the identity of the perpetrator, Abernathy testified that appellant was the individual who shot him on the night of the incident. Although the two had never met prior to the incident, Abernathy recognized appellant as the perpetrator because appellant's sweatshirt hood fell off during the shooting, revealing his face. Further, Wright testified that she was able to see the perpetrator's face as he attempted to break into the car in which she was sitting after the shooting. Wright specifically stated that she "got a good look, a very good look." Having seen the perpetrator's face, they were each able to identify appellant at trial. Further, Abernathy and Wright selected appellant's photograph during the photo array administered by detective Wise.

{¶ 13} In light of the uncontroverted evidence produced by the state at trial, we do not find that this is the exceptional case warranting reversal on manifest weight grounds. Accordingly, appellant's first assignment of error is not well-taken.

*Palmer*, 2015 WL 10323036, at *2.

It is well established manifest weight of the evidence claims are not cognizable on federal habeas review. *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir.2006); *accord Howard v. Tibbals*, 2014 WL 201481 at * 16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio Jan. 17, 2006). *See also Gibson v. Miller*, 2016 WL 6277229 at *1 (N.D. Ohio Oct. 27, 2016)("contentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims."). Under Ohio law, an argument a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess,* 2006 WL 2090093 at *7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983).

25

Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Palmer's conviction was against the manifest weight of the evidence.  *See id.*

Accordingly, because Palmer's Third Ground for Relief is not cognizable in a federal habeas proceeding, the Court recommends it be DISMISSED.

## VI.  Merits Review – Ground One

### A.      Standard of Review

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 49 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent

26

does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 40.  *See also Lopez v. Smith*, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.  See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. App'x 511, 516 (6th Cir. Jan. 10, 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the

27

state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**B.**     **Ground One – Ineffective Assistance of Appellate Counsel**

As discussed at length above, the Court is recommending Palmer's entire Petition be dismissed, as it was filed beyond the AEDPA statute of limitations.  However, in the interests of justice, the Court will also consider the portion of Ground One which was not procedurally defaulted.[10]

In his first ground for relief, Palmer argues appellate counsel was ineffective for failing "to raise viable issues on appeal."  (Doc. No. 1 at 5.)  Giving the *pro se* Petition a liberal construction, the Court will construe Palmer's first ground for relief as raising the argument his

---

[10]     As found above, the following portions of Ground One are procedurally defaulted: (1) allegations Palmer's appellate counsel failed to properly investigate and review the facts of the case and (2) the failure of appellate counsel to raise any other "viable issue" beyond sufficiency of the evidence.  (*See* Doc. No. 1 at 5.)

appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim.[11]

Respondent argues the state appellate court "reasonably applied the correct clearly established

Supreme Court precedent and reasonably determined" Palmer's ineffective assistance of counsel

claim lacks merit.  (Doc. No. 8 at 30, 32.)

The Supreme Court has held a defendant is entitled to effective assistance of counsel in

his first appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  In order to

establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's

conduct was so below acceptable standards of representation that counsel was not functioning as

"counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland*

*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must

demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an

extent that it rendered the proceeding unfair.  *Id.*  To establish prejudice, the "defendant must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient

performance must have "caused the defendant to lose what he otherwise would probably have

won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of

probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

The state appellate court considered Palmer's claim in his Rule 26B application and

rejected it as follows:

> "An application for reopening shall be granted in there is a genuine issue as
> to whether the applicant was deprived of the effective assistance of counsel

---

[11]     While Palmer does not explain what "viable issue" his appellate counsel failed to
raise, Palmer has consistently argued in the state courts it was a failure to raise a
sufficiency of the evidence claim.  (*See* Doc. No. 8-1, Exhs. 13, 15, 18.)

on appeal."  App.R. 26(B)(5).  Whether a genuine issue of ineffective
assistance of appellate counsel exists is determined by the two-prong test set
forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d
674 (1984).  *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996).

\*\*\*

In his assignment of error, appellant asserts that he was prejudiced by his
appellate counsel's failure to raise the issue of sufficiency of the evidence.
He contends that the record contains insufficient evidence to support his
convictions.  In particular, appellant urges that the state failed to introduce
evidence to establish appellant as the perpetrator of the crimes for which he
was convicted.

In reviewing whether or not the state provided legally sufficient evidence to
support a conviction, we must

> examine the evidence admitted at trial to determine whether
> such evidence, if believed, would convince the average mind of the
> defendant's guilt beyond a reasonable doubt.  The relevant inquiry is
> whether, after viewing the evidence in a light most favorable to the
> prosecution, any rational trier of fact could have found the essential
> elements of the crime proven beyond a reasonable doubt.  *State v.
> Jenks*, 61 Ohio.St.3d 259, 574 N.E.2d 492 (1991), paragraph two of
> the syllabus.

Contrary to appellant's assertion, we find that the evidence contained in the
record was sufficient on the issue of identity.  Notably, appellant's appellate
counsel raised a manifest weight argument in appellant's direct appeal,
wherein the issue of identity was raised.  In addressing this issue, we
examine the evidence presented by the state at trial, as follows:

> Regarding the identity of the perpetrator, Abernathy testified
> that appellant was the individual who shot him on the night of the
> incident.  Although the two had never met prior to the incident,
> Abernathy recognized appellant as the perpetrator because appellant's
> sweatshirt hood fell off during the shooting, revealing his face.
> Further, Wright testified that she was able to see the perpetrator's
> face as he attempted to break into the car in which she was sitting
> after the shooting. Wright specifically stated that she "got a good
> look, a very good look."  Having seen the perpetrator's face, they
> were each able to identify appellant at trial.  Further, Abernathy and
> Wright selected appellant's photograph during the photo array
> administered by detective Wise.  *Palmer*, 6th Dist. Lucas No. L-14-

1278, at ¶12.

> Viewing the evidence set forth above in a light most favorable to the
> prosecution, we hold that a rational trier of fact could have found the
> essential elements of the crime, including the identity element, proven
> beyond a reasonable doubt.  Thus, we conclude that appellate counsel was
> not deficient for failing to raise a sufficiency argument on appeal.

(Doc. No. 8-1, Exh. 16.)

The Court finds the state appellate court's determination that appellate counsel's

representation was not ineffective was neither contrary to, nor an unreasonable application of

clearly established federal law.  The United States Supreme Court has emphasized that reviewing

courts should "affirmatively entertain the range of possible 'reasons [defense] counsel may have

had for proceeding as they did,'" *Cullen v. Pinholster*, 563 U.S. 170, 96 (2011), and "indulge

[the] strong presumption" that counsel "made all significant decisions in the exercise of

reasonable professional judgment." *Strickland v. Washington,* 466 U.S. 669, 689-90 (1984).

Palmer asserts his appellate counsel should have raised a claim for sufficiency of the

evidence.  However, his appellate counsel did raise an argument for manifest weight of the

evidence, which the state appellate court rejected on direct appeal.  (Doc. No. 8-1, Exh. 10, 12.)

A "determination by the Ohio Court of Appeals that the conviction was supported by the

manifest weight of the evidence necessarily implies a finding that there was sufficient evidence."

*Nash v. Eberlin*, 258 Fed. App'x 761, 765 (6th Cir. 2007). *See also State v. Lee*, 158 Ohio

App.3d 129, 134, 814 N.E.2d 112, 115 (Ohio 9th App. Dist July 28, 2014)("Thus, a

determination that a conviction is supported by the weight of the evidence will also be dispositive

of the issue of sufficiency.").  Therefore, had Palmer's appellate counsel raised a sufficiency of

the evidence claim on appeal, it is unlikely the state appellate court would have found the state

trial court in error, as they had already determined Palmer's case was not "the exceptional case warranting reversal on manifest weight grounds." (Doc. No. 8-1, Exh. 12.) *See Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir.2007)(finding the failure to raise an issue on appeal constitutes ineffective assistance only if there is "a reasonable probability" that the issue would have changed the result of the appeal.). Thus, Palmer's claim does not meet the two-part test enunciated in *Strickland* because he cannot establish a "reasonable probability" the result of his appeal would have been different.

Accordingly, the Court recommends Palmer's Third Ground for Relief be DISMISSED, or in the alternative, DENIED.

## VI. Conclusion

For all the reasons set forth above, the undersigned recommends the Petition be DISMISSED.

Date:  October 22, 2018                         *s/ Jonathan Greenberg*
                                                Jonathan D. Greenberg
                                                United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**